### TEXAS EMPLOYERS' INS. ASS'N v. BECKMAN.

#### No. 9663.

Court of Civil Appeals of Texas. Austin.

Dec. 10, 1947.

Rehearing Denied Dec. 29, 1947.

Kemp, Lewright, Dyer, Wilson & Sorrell and Cecil D. Redford, all of Corpus Christi, for appellant.

Phillips, Horton & Smith and Warren B. Phillips, all of Corpus Christi, and L. Hamilton Lowe, of Austin, for appellee.

HUGHES, Justice.

Henry H. Beckman, appellee, recovered a judgment against Texas Employers' Insurance Association, appellant, for total and permanent disability under the Workmen's Compensation Act.

Trial was before a jury which answered every special issue favorable to appellee.

The sufficiency of the evidence to support the verdict of the jury is not challenged in any respect except as to the findings excusing appellee in delaying filing of application for compensation with the Industrial Accident Board beyond six months from the date of injury.

The injury was sustained May 27, 1945; claim for compensation was filed January 25, 1946, approximately eight months from the date of injury, or about two months beyond the primary statutory period.

Sec. 4a, Art. 8307, V.A.C.S., provides two excuses for failure to file claim for compensation within six months after the injury. The first is "good cause" in "meritorious cases", which must continue from the end of the six months period until the claim is filed, reasonable allowance being made for the preparation and filing of claim after expiration of good cause. The second excuse is death of the employee or his physical or mental incapacity in which cases claim may be filed within six months after death or removal of disability.

The "good cause", consisting of appellee's belief that his physical condition would improve, as found by the jury, independent of mental or physical incapacity, expired October 23, 1945, within the six months period following the injury, and would not justify or excuse the delay until January 25, 1946, in filing claim.

The jury further found that appellee was physically and mentally incapacitated from October 23, 1945, until January 22, 1946; that these incapacities caused the delay in filing claim until it was filed and that such incapacities constituted good cause for the delay in filing.

If the findings of mental and physical incapacity, or either of them, is supported by sufficient evidence, then the filing was timely since it was made within six months following the removal of a disability which commenced within six months from the date of the injury.

On October 23, 1945, appellee quit his job and went to the United States Naval Hospital at Corpus Christi, where he remained until November 27, 1945. He went

from the hospital to Benavides by bus, where he was met by his wife. The trip was hard on him and he testified he was near a nervous breakdown. Upon reaching home he went to bed for two weeks, after which he was up and down and made a few trips in the car, his wife driving, after the mail, a distance of about three miles. He also made one trip to Freer, Texas, with his wife driving the car, a distance of about 22 miles; after which he was completely given out. He took phenobarbital tablets, a narcotic, three times a day from November 23, 1945, until January 22, 1946, in order to relieve pain. He also took a medicine called ananophlin three times a day. The effect of these medicines was to cause a loss of memory and to say things that "do not sound right." Appellee's own opinion of his condition was that he was physically and mentally unable to file his claim earlier than he did.

The evidence otherwise shows that appellee was injured by the inhalation of hot propane gas which aggravated a heart condition and the growth of fibrous tissues in the lungs; that these conditions would not improve and that appellee was totally and permanently disabled.

While appellee was in the naval hospital he filled out and signed a claim for sick benefits against the Equitable Life Insurance Company, his wife having brought the papers to him.

The delay in filing was short, a little less than two months. Appellant has suffered no injury which could be ascribed to the delay. There is no evidence that appellee has at any time feigned illness or exaggerated the poor state of his health. The medical attention which he received, his long stay in the hospital and the unattacked verdict of the jury that he is totally and permanently disabled, attest and give support to the findings that appellee was incapacitated to such an extent that he should not be held to strict accountability in attending to his affairs and in filing claim for compensation within the primary period following his injury.

■■ The evidence clearly shows that appellee from the time he entered the hospital until the time of trial was a very sick man. His stay in the hospital was from October 23 to November 27, when he returned home and was confined to his bed for two weeks. Considering these facts along with appellee's general physical condition, the pain he was in and the sort of medicine he was taking, we are of the opinion that there was sufficient evidence to support the jury findings of both physical and mental incapacity. Any other conclusion would do violence to the rule of liberally construing the Workmen's Compensation Act in the employee's favor, which rule should have particular force when applied to the technical and procedural provisions of the Act.

In connection with the issue of physical incapacity the trial court gave the following instruction: By the term "physical incapacity" is "meant such physical incapacity as would or might prevent an ordinary prudent person from transacting business and filing such claim."

Appellant's objections to such instruction were: "Defendant objects and excepts to the definition of 'physical incapacity' as that term is used in Special Issue Number Seventeen, for the reason that it imposes upon the defendant a greater burden than is imposed by the Act, in that a person may be disabled from transacting business generally and yet be able to initiate the filing and the filing of a claim for compensation under the Workmen's Compensation Act, and the jury is calculated to be led to believe that the definition means that if the plaintiff is disabled from transacting his business generally, such as running a business establishment or otherwise carrying on a business, that he is physically incapacitated to file his claim. And further for the reason that said definition constitutes a general charge whereas this cause is submitted upon Special Issues."

The Workmen's Compensation Act nor any decision under it defines "physical incapacity" as used in Sec. 4a, Art. 8307, V.A.C.S.

■ Under the issue as submitted the burden was on appellee to establish by a preponderance of the evidence that he was physically incapacitated to file a claim for compensation. Under the accompanying

instruction appellee not only had the burden of establishing his physical incapacity to file a claim, but also physical incapacity to transact business, to be judged by the standard of an ordinarily prudent person. We believe the instruction as to transacting business generally is too broad a definition to put upon the term "physical incapacity" as used in this statute, but, in our opinion, the inclusion of this definition in the instruction given is harmless error since coupled with the incapacity to transact business was the incapacity to file the claim, both of which the jury must have found in order to answer this issue in the affirmative.

■ The last point raised relates to argument of appellee's counsel to the jury. The argument and the inferences to be drawn therefrom are succinctly stated by appellant in its brief, which we quote:

"Briefly summarized, in the argument complained of the attorney for appellee commented on the fact that appellee, Beckman, had been given a careful physical examination by a doctor of the defendant's choice; that if the appellee was not totally disabled, etc., and 'if the word of a medical man or doctor could come here and tell you, * * * Mr. Dyer would be honored by his presence'; that not a member of the medical profession had hit the stand to deny Beckman's testimony; that if any of certain issues could be answered 'Yes', there would be medical testimony about it; and that if any medical evidence was available that disease was the cause of appellee's condition, that appellant's attorneys would have produced such testimony.

"There was testimony in the record that Beckman had been examined at the company's expense by Dr. Thomason, a physician of Corpus Christi, Texas. The evidence did not show that the testimony of such doctor was available to appellant.

"It is obvious from a reading of all of the argument complained of that Mr. Smith first informed the jury that the appellee had been examined by Dr. Thomason in Corpus Christi, and then stated or inferred that the testimony of Dr. Thomason would not have been contrary to the testimony of Beckman as to his physical condition and that the testimony of Dr. Thomason would not have supported the contentions of the appellant that the disability of the appellee was solely the result of disease disassociated with and disconnected from any alleged injury that the appellee had received. This is the only logical deduction from the argument of Mr. Smith, and it is obvious that the sole purpose of making such argument was to lead the jury to believe that if Dr. Thomason, who had examined appellee at the request of appellant, had been called as a witness, his testimony would have supported the contentions of appellee as to his disability and the cause thereof and would have been contrary to the contentions of appellant, and such argument amounted to a criticism of the appellant for not producing such witness, when the record did not show that he was available to testify or was under the control of the appellant."

The argument was not erroneous. Many authorities could be cited to support this conclusion but we will refer only to the case of Consolidated Underwriters v. Lowrie, Tex.Civ.App., 128 S.W.2d 421, 423 (Writ refused), because of its factual similarity. We quote from that opinion: "Dr. S. T. Wier examined appellee for his general injuries but did not examine his eyes, his sinuses and his antrums. On the advice of Dr. Wier, appellant had Dr. Hodges perform these examinations. Though Dr. Hodges made these examinations on the request of appellant, he was not called as a witness. On this statement it was not error for appellee's counsel in his argument to call these facts to the jury's attention, and to argue 'that there must be some reason for the appellant's failure to bring the witness to tell the jury what he had found in making his examination,' and that it was reasonable to suppose 'that Dr. Hodges would not do the appellant any good or it would have called him as a witness.'"

See 17 Tex.Jur., p. 302, for discussion of principles underlying cogency and leigitimacy of such argument.

There being no reversible error the judgment of the trial court is affirmed.

Affirmed.